IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY WHARTON, ISIAH ELDER, and DONALD HART, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 12 C 1157 |
| COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, | ) ) ) ) |
| Defendants. | ) ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs Isiah Elder, Donald Hart, and Timothy Wharton have brought a class action against Comcast Corporation and Comcast Cable Communications Management, LLC (collectively "Comcast"). The plaintiffs allege that Comcast violated the federal Fair Labor Standards Act ("FLSA") (Count I), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105 (Count II), and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115 (Count III). According to the plaintiffs, Comcast failed to compensate them for pre-shift work, post-shift work, and work during meal breaks. The plaintiffs also allege that Comcast failed to pay them overtime wages when appropriate. On September 4, 2012, the court granted Comcast's motion to dismiss the IWPCA claim without prejudice, but granted the plaintiffs leave to amend their complaint to assert additional allegations relevant to the IWPCA claim. The plaintiffs filed their Second Amended Complaint on September 18, 2012 (Dkt. No. 56), and Comcast again moved to dismiss the IWPCA claim (Dkt. No. 58). For the reasons stated below, Comcast's motion is denied.

LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

## ANALYSIS

With certain exceptions not relevant here, the IWPCA requires every employer "at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period." 820 ILCS 115/3. Wages are defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2. The IWPCA therefore does not provide an independent right to payment of wages and benefits; instead, it only enforces the terms of an existing contract or agreement. *See Sanchez v. Haltz Const., Inc.*, No. 09 C 7531,

2012 WL 13514, at *5 (N.D. Ill. Jan. 4, 2012) (Grady, J.) (citing *Nat'l Metalcrafters, Div. of Keystone Consol. Indus. v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986)). Accordingly, "for a person to state a claim under the Wage Collection Act, he or she must plead that wages or final compensation is due to him or her as an employee from an employer under an employment contract or agreement." *Landers-Scelfo v. Corporate Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2d Dist. 2005).

The plaintiffs allege here that Comcast violated its employment agreement with them to pay them an hourly wage and to pay them overtime pay at a rate of 1.5 times the hourly rate when they worked more than forty hours a week. (Dkt. No. 56 ("Second Am. Compl.") ¶ 14.) They allege that the agreement is documented by (1) statements in Comcast's employee handbooks describing the overtime policy; (2) Comcast's statements in parallel litigation relying on the handbook for the proposition that Comcast "requires" employees to be paid for all time worked, Dkt. No. 41, at 5, *Brand v. Comcast Corp.*, No. 12-cv-1122 (N.D. Ill. July 16, 2012); (3) Comcast's "Timekeeping Pay Process," a document describing the overtime policy; (4) Comcast's November 2008 timekeeping system announcement stating that "[o]vertime will now be calculated based on a normal 40-hour work week"; (5) Comcast's 2011 and 2012 employee training programs which told employees that Comcast would pay for all time worked, and that "[i]f you work overtime, you will usually be paid one and a half times your normal rate"; and (6) other unspecified "statements" by Comcast's "managers and supervisors during meetings" with employees. (*Id.* ¶ 14.)

Comcast challenges the sufficiency of those allegations first by noting that its handbooks from 2005-2012 all contain a disclaimer stating: "The contents of the Comcast Employee Handbook are not intended to create an express or implied contract of employment and you may not rely on

it as such." (Dkt. No. 59, at 7.)[1] The 2003 and 2004 handbooks contain similar language, but also state that the handbooks do not create any "other legally enforceable promise between you and the Company." (*Id.* at 8.) All the handbooks further provide that:

> The individual provisions of the Employee Handbook are simply guidelines, and Comcast reserves sole discretion to interpret them and resolve any conflict between or among policies. Comcast also reserves the right to change, delete, suspend, discontinue, or otherwise revise the Employee Handbook, or any individual policy contained in it, at any time for any reason, with or without notice.

(*Id.*)

At least five judges in this district have held that similar disclaimers preclude the creation of an IWPCA agreement. *Brand v. Comcast Corp.*, No. 12 CV 1122, 2012 WL 5845639, at *3-4 (N.D. Ill. Nov. 19, 2012) (Kim, J.); *Camilotes v. Resurrection Health Care Corp.*, No. 10-cv-366, 2012 WL 2905528, at *6 (N.D. Ill. July 16, 2012) (St. Eve, J.); *Harris v. Seyfarth Shaw LLP*, No. 09 C 3795, 2010 WL 3701322, at *2 (N.D. Ill. Sept. 9, 2010) (Bucklo, J.); *Martino v. MCI Comm'cns Servs., Inc.*, No. 08 C 4811, 2008 WL 4976213, at *8 (N.D. Ill. Nov. 20, 2008) (St. Eve, J.); *Skelton v. Am. Intercont'l Univ. Online*, 382 F. Supp. 2d 1068, 1075 (N.D. Ill. 2005) (Kennelly, J.); *Pautlitz v. City of Naperville*, No. 89 C 8855, 1991 WL 33658, at *2-3 (N.D. Ill. Mar. 8, 1991) (Plunkett, J.). Two other judges have held that such disclaimers, although preventing the creation of a contract, do not preclude an IWPCA agreement. *See Hall v. Sterling Park Dist.*, No. 08 C 50116, 2011 WL 1748710, at *6 (N.D. Ill. May 4, 2011) (Mahoney, J.) (reporting that court declined to dismiss the complaint after it "took notice of language in the Personnel Policy Manual granting

---

[1] The court may consider the handbooks on a motion to dismiss because they were attached to the motion to dismiss, were referred to in the complaint, and are central to the plaintiffs' claims. *See Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

overtime wages only to non-exempt employees and acknowledged that the manual was not an employment contract, but found that Plaintiff's allegations allow for inquiry into 'the way the employer-employee relationship has played out over the course of the relationship'" (citation omitted)); Dkt. No. 37, *Bollie v. Bd. of Trs.*, No. 07 C 1382 (N.D. Ill. July 31, 2007) (Shadur, J.) (oral ruling).

None of those judges' decisions addressed in detail the distinction that the IWPCA and Illinois law establish between an "agreement" and a "contract." Those terms had settled definitions at common law, a background against which the Illinois legislature is presumed to have legislated. *See Advincula v. United Blood Servs.*, 678 N.E.2d 1009, 1017 (Ill. 1996). Moreover, "[a] term of well-known legal significance can be presumed to have that meaning in a statute," and "common law meanings of words and terms may be assumed to apply in statutes dealing with new or different subject matter, to the extent that they appear fitting and absent evidence indicating a contrary meaning." *Id.* (citation omitted). Illinois courts have followed that principle when interpreting the IWPCA by drawing on the *Restatement (Second) of Contracts* to define the term "agreement" according to its common law definition. *See Landers-Scelfo*, 827 N.E.2d at 1059 (quoting *Restatement (Second) of Contracts* § 3 (1981)); *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. App. Ct. 1st Dist. 2004) (same). This court will do the same in its effort to apply Illinois law faithfully.

First, the *Restatement* distinguishes an agreement from a contract. *Restatement (Second) of Contracts* § 3, cmt. a. The disclaimers' statements that the handbooks do not create a "contract" therefore say nothing, by themselves, about whether the handbooks create an agreement. Accordingly, Illinois courts have held that "[a]n employment agreement need not be a formally

negotiated contract," and that "'parties may enter into an "agreement" without the formalities and accompanying legal protections of a contract.'" *Landers-Scelfo*, 827 N.E.2d at 1059 (quoting *Zabinsky*, 807 N.E.2d at 671); *accord Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 834 N.E.2d 966, 972 (Ill. App. Ct. 1st Dist. 2005). Under that standard, the employment handbooks can still create an agreement, even if they do not create a contract.

Second, the *Restatement* defines an agreement as "a manifestation of mutual assent on the part of two or more persons." *Restatement (Second) of Contracts* § 3. The *Restatement* then distinguishes an agreement from a "bargain" (a necessary prerequisite of a contract except in limited circumstances, *see id.* § 3 cmt. e), which the *Restatement* defines as "an agreement to exchange promises or to exchange a promise for a performance or to exchange performances." In other words, unlike a bargain (and most contracts), an agreement under Illinois law does not require the exchange of promises, or indeed any exchange. Instead, as Illinois courts recognize, an agreement requires only "mutual assent to terms." *Landers-Scelfo*, 827 N.E.2d at 1059.

Moreover, there is plainly mutual assent to the terms in the handbooks here. It is irrelevant that the disclaimers in the 2003 and 2004 handbooks prevent the creation of a "promise," and it is similarly irrelevant that all the handbooks purport to be "guidelines" and retain Comcast's right to change the terms in the handbooks at any time. Reserving the right to change the terms prevents the creation of a promise, but it does not vitiate Comcast's assent to the terms in the handbooks, at least so long as the handbooks were in effect.[2] The absence of a promise thus does not preclude the

---

[2] Needless to say, no party disputes that the plaintiffs' decision to work for Comcast while the terms of the handbooks were in effect sufficiently manifests their assent to the terms contained therein.

existence of an agreement.[3]

The *Restatement*'s definition of an agreement, as adopted by Illinois courts, similarly dismantles Comcast's next argument: that the terms of the handbooks do not show an agreement because they establish nothing more than that Comcast will comply with existing employment law. As Comcast points out, the terms of the alleged agreement—that it will pay an hourly wage and will pay overtime at 1.5 times that wage—are nothing more than what Comcast is required to do under the federal Fair Labor Standards Act and the IMWL. Comcast's argument is based on an intuition grounded in contract law, that a contract generally cannot be formed without a bargained-for exchange, or consideration. *Restatement (Second) of Contracts* § 71. A promise to perform a legal duty that a party is already bound to perform cannot constitute consideration, because in that case the party has not actually promised anything; he has merely given the other party "an empty bag." *See id.* § 73. Comcast's argument is, in essence, that Comcast did not offer any consideration by merely stating that it will comply with the law.

The problem with that argument, again, is that an agreement is distinct from a bargain,

---

[3] That conclusion is bolstered by Illinois law on at-will employment relationships. Even though at-will employment relationships include no terms obligating either party to continue the employment or any term of the employment in the future, Illinois courts generally treat at-will employment relationships as contractual in nature. *See Walker v. Abbott Labs.*, 340 F.3d 471, 477 (7th Cir. 2003) ("From our review of the case law, it does appear that Illinois courts generally treat at-will employment relationships as contractual in nature."); *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991) ("'[W]here the contract is one of employment, it is immaterial whether it is for a fixed period or is one which is terminable by either party at will, both parties being willing and desiring to continue the employment under that contract for an indefinite period.'" (quoting *London Guarantee & Accident Co. v. Horn*, 69 N.E. 526 (Ill. 1903))); *Blount v. Stroud*, 915 N.E.2d 925, 937 (Ill. App. Ct. 1st Dist. 2009) ("Although at-will employees lack a fixed duration of employment, there are nevertheless contractual aspects to an at-will employment relationship, such as wages, benefits, duties, and working conditions."). Similarly, Comcast's reservation of the right to change the terms in its employment handbooks does not preclude the formation of an agreement.

because an agreement does not require a bargained-for exchange of consideration. It is thus irrelevant that Comcast offered nothing more than what it was already bound to do. Comcast's statements in the handbooks nonetheless manifest assent to compliance with the terms of the law, and are sufficient to create an agreement.

Comcast next raises a policy argument, contending that if an employer's statements about its compensation policy (in an employee handbook or elsewhere) are sufficient by themselves to create an employment agreement under the IWPCA, then employers will have an incentive to avoid issuing any statements about compensation that could be used against them in IWPCA lawsuits. As Comcast puts it, "[e]mployers would have to choose between refraining from disseminating wage and hour policies to avoid potential IWPCA liability, but risking a finding that they did not promote an atmosphere of compliance with wage and hour laws, or promulgating such materials to comply with FLSA obligations." (Dkt. No. 59, at 12.) The court does not share Comcast's worries. Indeed, as Comcast points out, employers are required by multiple provisions of law, including in the IWPCA itself, to disseminate their compensation policies to employees. *See* 820 ILCS 115/10 ("Employers shall notify employees, at the time of hiring, of the rate of pay and of the time and place of payment. Whenever possible, such notification shall be in writing and shall be acknowledged by both parties. Employers shall also notify employees of any changes in the arrangements, specified above, prior to the time of change."). Plainly, employers need not choose between violating those provisions and incurring IWPCA liability. They can avoid both hazards by merely disclosing their compensation policies, and then complying with the policies they have disclosed (until they change them after giving notice to their employees of new policies). That is precisely the outcome that the IWPCA seeks to ensure.

Similarly, the court is unconcerned with Comcast's contention that a broad definition of "agreement" renders the IWPCA largely redundant with the IMWL. The IWPCA requires employers to pay employees in accordance with their employment agreement. The IMWL, by contrast, sets a floor for employee compensation. The two acts perform different functions. To be sure, the two requirements will amount to the same thing for employees with employment agreements establishing their compensation at the IMWL's floor. That fact is inconsequential, however, for the IWPCA and the IMWL still aim at two different overlapping, yet distinct, goals.

Comcast also cites the reasoning of the court in *Jaramillo v. Garda, Inc.*, No. 12 C 662, 2012 WL 1378667 (N.D. Ill. Apr. 20, 2012) (Leinenweber, J.). There, the court dismissed an IWPCA claim in part because it concluded that the Illinois Department of Labor took the position that the IWPCA did not cover overtime violations. *Id.* at *3. The court's conclusion rested on the Department of Labor's form for filing a wage claim under the IWPCA, which included no spot to allege an overtime claim and instructed claimants with overtime claims to use the IMWL form instead. *See id.* On May 15, 2012, after *Jaramillo* came down, however, the Department of Labor began using a new form including a spot for IWPCA claimants to claim overtime violations. Ill. Dep't of Labor, Wage Claim Application 1, http://www.state.il.us/agency/idol/forms/pdfs/IL452WC02.PDF (last visited Dec. 6, 2012) (providing a box to check to indicate that a claim for unpaid wages is for "overtime"). The reasoning of *Jaramillo* is thus no longer valid. Indeed, to the extent the opinion of the Department of Labor is authoritative, it supports the court's determination that the plaintiffs' IWPCA claim for overtime violations may proceed here.

Finally, to this point this court has not discussed the plaintiffs' additional allegations beyond

the employee handbooks showing the existence of an agreement. Those allegations include other written and oral affirmations by Comcast of the employment terms referenced in the employee handbooks. Accordingly, they support the court's determination that the plaintiffs have adequately alleged Comcast's mutual assent to the terms of an employment agreement. Comcast's motion to dismiss is denied.

## CONCLUSION

For the reasons explained above, Comcast's motion to dismiss Count III of the plaintiffs' Second Amended Complaint (Dkt. No. 58) is denied. The defendants' answer to Count III is due 12/20/12. The parties are to follow the schedule set on 10/10/12. (Dkt. No. 68.) The case is set for status on 1/24/13 at 9:00 AM. The parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: December 6, 2012